## Lantz *versus* Frey and Wife.

1. Where a person is received into a family as a *child* and not *as a servant*, as an object of charity and not as a hireling, the relation is never changed by legal implication into a relation giving a right to wages.

2. The mother of a minor became married a second time, and the minor child was received by the husband into his family, and remained there until she became married: It was *held*, that there being no *express* contract to pay wages to the minor, and there being no distinct severance of the family relation and an employment afterwards, wages could not be recovered by the female from her father-in-law.  See same case in 2 *Harris* 201.

3. The law will not imply a promise to pay from an admission by the father-in-law that he owed the daughter for her services, or that he ought to pay her something, but accompanied by the declaration that he would not pay her anything.

4. Where the verdict and judgment in an action of assumpsit exceed the amount of damages laid in the declaration and the plaintiff does not offer to remit the excess, the judgment may be reversed.

ERROR to the Common Pleas of *Erie county*.

This was an appeal from the judgment of a justice of the peace. It was an action by Jacob Frey and Catharine, his wife, *v.* John Lantz, to recover upon an implied *assumpsit* to pay for the services of the wife under the following circumstances.  Lantz, the defendant, married a widow, the mother of the wife of Frey.  Catharine, at the time of the marriage of her mother, was about eight or nine years of age.  Lantz told her that if she would come and live with him he would treat her as one of his own children.  She was received into the family of Lantz, and she continued there until she was between 18 and 19 years old, when she married Jacob Frey.  Soon after her marriage this suit was brought by her husband and herself, to recover wages for the time she lived in the family of her stepfather.

It was proved by J. Evans, that on the day of the trial of the case before the justice, Lantz said he knew he owed her—that he ought to pay her something for her services, but that he would not pay her anything.

This same case is reported in 2 *Harris* 201.  In the *narr.* *ninety* dollars was claimed.

[Lantz *v.* Frey and Wife.]

CHURCH, J., charged, that the mere fact that the female lived in the family of the defendant, as one of them, raised no implied promise to pay wages. But it was alleged, that there was a promise in relation to the daughter coming to live with the defendant, and that in consequence she did so, and worked for him for several years. If defendant owed her for labor and service, the law implied a promise, unless repelled by something limiting it. He referred to the jury to determine whether the defendant admitted that he owed the plaintiff or was indebted to her for her services; and if he did, that it was something which tended to form an equivalent for an express promise to pay.

Verdict was rendered for the plaintiff for $100.

Error was assigned to the charge; also in submitting to the jury that they might infer a contract, when there was no evidence on which to found such inference.

Also, that there was error in entering judgment on the verdict, which was for a greater sum than that laid in the declaration.

*Marshall*, for plaintiff in error.—He cited 2 *Harris* 201, report of this same case; 5 *W. & Ser.* 513, Candor's appeal.

*Thompson*, with whom was *Grant*, for defendant in error.

The opinion of the Court was delivered, October 11, by

LOWRIE, J.—There should have been no recovery under the evidence in this case; especially after the previous decision of it in this Court: 14 *State Rep.* 201. It was there clearly enough declared that where a person is received into a family as a child, and not as a servant, as an object of charity, and not as a hireling, that relation is never changed, by legal implication, into a relation giving a right to wages; and that right never arises, as between those parties, except from an express contract, or something equivalent to it.

But this principle seems not to have been properly applied; for a recovery has been again allowed without any express contract or any equivalent circumstances. Mrs. Frey was eight or nine years old when her mother, then a widow, married Lantz, and then, with her mother, she became a member of Lantz's family, which relation continued until she grew up and married Jacob Frey.

It was a family relation entirely equivalent, while it lasted, to that of parent and child; and the law implies no mutual responsibilities inconsistent with that relation. The relation of master and servant is an entirely different one, wherein the duty of each is implied from the character of the relation, or defined by contract, and enforced by law. The duties belonging to the family relation are strictly moral in their character, and this character

[Lantz *v.* Frey and Wife.]

would be lost or degraded if they were enforced by the power of the state. Those are exceptional cases in which the law investigates and directs family affairs.

This principle is of very high importance; for the more the province of duty is inspected and ordered by the power of the state, the less exercise is given to the individual conscience, the less scope allowed for individual improvement, and the less freedom in the development of moral character. Submission to law, as matter of principle, is certainly a very high virtue; but when the law becomes so meddlesome as to restrict the play of other virtues, then morality is deprived of that freedom of action which is essential to its existence. The law cannot apply its gauge to the processes of charity; for it is of its very essence that it varies in its forms as widely as the temperaments and intellects of men, and will not bear the test of a common standard. If the law opens its door to children and foster children to complain that they have not received as much as they deserve, then kindness must shrink from action and calculate the chances of a lawsuit before it indulges its inclinations.

Cases must of course arise wherein great injustice will be done through the neglect, ignorance, and selfishness of persons occupying the parental position; but still, it is much better to endure such evils than to run into the greater one of allowing the state to intermeddle with family duties. An attempt by it to supply the defects of family regulations would produce infinitely more evil than good; and it could not be reduced to practice without resulting in an intolerable tyranny.

Let it be well understood that wherever individuals stand to each other in a family relation, as distinguished from that of master and servant, the law implies no contract for wages. Until this relation is distinctly terminated by some unequivocal act changing the family relation to one of master and servant, the law cannot interfere to compel the payment of wages. Of course an express contract for wages will have this effect, and it is not easy to see what other circumstances will be equivalent, unless it be an open and unambiguous severance of the family bond and an employment after that.

Even if Lantz did say that he owed Mrs. Frey, or ought to pay her something, he said at the same time that he would not pay her, and was then resisting her claim, and it is impossible that the law can, from this, imply a promise to pay; and so the Court ought to have instructed the jury. If the duty to pay wages does not arise from the relation of the parties, it cannot be implied from any such expressions.

These principles require a reversal of the judgment, and without them this would be the case, for the judgment exceeds the

[Lantz *v*. Frey and Wife.]

damages laid in the declaration, and the plaintiffs have not offered
to remit the excess.

Judgment reversed and new trial awarded.