DETERMINED IN

# THE SUPREME COURT

OF THE

## STATE OF UTAH

(Continued·from Volume 52)

### WILKIN v. O'BRIEN.

No. 3224. Decided Dec. 2, 1918. (176 Pac. 853.)

1. EXECUTORS AND ADMINISTRATORS—AGREEMENT TO PAY FOR SERVICES—JURY CASE. In granddaughter's action against grandmother's estate for services in nursing, also for medicines and supplies, case *held* for ·jury under evidence that services were unusual and disagreeable, that grandmother promised plaintiff to make it right, that she gave plaintiff a note which was bad for informality. (Page 5.)

2. EXECUTORS·AND ADMINISTRATORS—IMPLIED CONTRACT TO PAY FOR SERVICES—RELATIONSHIP OF PARTIES. To render grandmother's estate liable to granddaughter for services as nurse, and for medicines and supplies, it was not necessary that grandmother have expressly contracted or promised to pay, her promise being inferable from circumstances.[1] (Page 6.)

3. TRIAL—INCONSISTENT FINDINGS—JUDGMENT. A judgment is not necessarily vitiated because two of the findings are so contradictory as to render their meaning unintelligible, question being whether findings as a whole indicate what court intended, so that from them its intention can be satisfactorily determined. (Page 7.)

4. EXECUTORS AND ADMINISTRATORS—ACTION FOR SERVICES—FINDINGS—SUFFICIENCY TO SUPPORT JUDGMENT. In granddaughter's suit against grandmother's estate to recover for services as nurse, and for supplies and medicines, findings, though inartistic, con-

---

[1] *Mathias* v. *Tingey*, 39 Utah, 561, 118 Pac. 781, 38 L. R. A. ·(N. S.) 749.

Vol. 53—1

fusing, and apparently contradictory, *held* sufficiently intelligible to support judgment for plaintiff for $390. (Page 7.)

5. LANDLORD AND TENANT—TENANCY—PAROL GIFT OF REALTY—CONFIRMATION BY DEED. Where a woman, whose granddaughter after her marriage came to live with her, gave the girl her home by parol gift, and later confirmed the gift by making a deed, the granddaughter was not liable to her grandmother's estate for rent of the home between original gift and confirmation. (Page 9.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. P. C. Evans,* Judge.

Action by Mary Wilkin against D. J. O'Brien, as executor of the last will and testament of Esther Byrne, deceased.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*William H. Leary* and *James M. Lanigan* for appellant.

*S. P. Armstrong* for respondent.

THURMAN, J.

This is an action by plaintiff against the defendant, as executor, to recover the sum of $2,236.60, including interest, for services alleged to have been rendered, and for medicines and supplies alleged to have been furnished, to defendant's intestate, Esther Byrne, deceased, during her lifetime, to-wit, from and including the 1st day of January, 1913, to and including the 2d day of April, 1916.

Defendant, answering, denies any knowledge or information sufficient to form a belief as to the alleged services rendered, or board or medicine furnished; and further alleges that the plaintiff is the granddaughter of Esther Byrne, deceased, and made her home with said deceased until plaintiff's marriage with James Wilkin; that deceased, prior to plaintiff's said marriage, clothed, cared for, and educated her and otherwise treated her as her own daughter; that plaintiff

after her said marriage continued (with her husband) to live
with deceased up to the time of the death of the deceased, in
April, 1916; that deceased was the owner of the home in
which she resided, and was at all times possessed of sufficient
means to provide the necessaries for the home, and was in no
wise dependent on plaintiff or her husband for support; that,
if plaintiff did render any services to deceased, the same were
done voluntarily, and without promise of reward or com-
pensation, and were in consideration of blood relationship,
and the fact that said parties were residing under the same
roof.  Defendant further alleges that if any services were
rendered deceased by plaintiff, or board or medicine fur-
nished, the plaintiff was compensated therefor by deceased in
deeding to plaintiff the home of deceased and by advancing
to plaintiff certain sums of money.

By way of counterclaim, defendant alleges, in substance,
that plaintiff and her husband, for more than three years,
resided with the deceased, occupied and enjoyed her home as
a place of residence, and that the reasonable rental value of
said home and furniture therein was the sum of $2,500; that
during said time deceased furnished plaintiff and her hus-
band goods, groceries, and supplies of the reasonable value of
$1,500, no part of which has been paid.

Defendant prayed judgment against plaintiff for the sum
of $5,000 and interest thereon and costs.

The case was tried to the court without a jury.  The court
dismissed defendant's counterclaim, and found for the plaint-
iff in the sum of $390.  Judgment was entered accordingly.

Defendant appeals, and assigns as error the order of the
court overruling the motion for nonsuit, inconsistencies in the
findings of fact, and that the same are contradictory and
unintelligible, insufficiency of the evidence to sustain the
findings, and that the findings and judgment of the court are
against law.

We have not undertaken to state the errors relied on by ap-
pellant, as stated by him in the assignments of error, but the
foregoing, in substance, covers and includes all that are
deemed material.

The testimony given by plaintiff tends to show that the deceased, Esther Byrne, was the grandmother of the plaintiff, and that the plaintiff resided with the deceased all her life; that plaintiff married in October, 1913, and that she and her husband, at deceased's request, thereafter lived with the deceased; that plaintiff built an extra room to the house, painted and shingled it, and made other repairs; that she bought furniture and put it in the house; that she took care of the deceased as she would a little child; that she washed her face combed her hair, dressed her, prepared her for her meals, and took her meals to her bed for breakfast every morning; that deceased was feeble and childish; that plaintiff washed deceased's clothing, the same being in such a condition that no one else would do it; that deceased's bowels were sloughing off all the time from old age; that the services performed before deceased became bedridden were worth a dollar a day; that plaintiff furnished board and medicine and bought toddies for deceased; that from the time deceased returned from Salt Lake City until she died she was just like a sick person; that this condition went on for two years, but the last six months it was worse; that during that period the services were worth $30 a week; that plaintiff did all the washing, kept the house clean, furnished the lights and coal, and paid all the expenses.

On cross-examination plaintiff, speaking of the services rendered by her, testified that while deceased was sick she always told plaintiff she would make it right. Plaintiff stated that deceased deeded her the home and gave all the rest something; that she did not think deceased considered she was deeding plaintiff the home as consideration for services; did not think deceased considered it in that way.

There was other testimony for plaintiff tending to, corroborate the above as to the character and extent of the services rendered; that the same were disagreeable on account of the nature of the disease with which deceased was afflicted; she was unable to control her bowels; frequent cleansing of her body, clothing, and bedclothing was necessary, rendering the service not only arduous, but disagreeable and offensive. There was also testimony to the effect that deceased gave, or

attempted to give, the plaintiff a promissory note of the face value of $3,000, but that the gift, lacking some legal formality, did not become effective; that deceased stated on one occasion that she "would have been dead years before if it had not been for Mary (meaning the plaintiff); that Mary had been a good girl to her, and all that she (deceased) wanted was a decent burial and a stone to mark her resting place; the rest she expected to leave to Mary."

The testimony above detailed, as to services rendered, supplies furnished, and the value thereof, was contradicted to a greater or less extent by witnesses for defendant.

At the close of the testimony introduced by plaintiff defendant moved for a nonsuit, assigning as grounds therefor:

"(1) That no promise on the part of the deceased to pay, either expressly or impliedly, was ever made by deceased to plaintiff, for the services rendered or alleged to have been rendered; (2) that the evidence of the plaintiff shows that the services were gratuitous and were performed without expectation of remuneration; (3) that the presumption that the services were gratuitous, on account of being performed by a grandchild, and in this case where the parties had always lived as parent and child, was not overcome by any proof on the part of the plaintiff that said services were performed at the request of the decedent and that said decedent promised to pay the plaintiff therefor."

The motion for nonsuit was denied.

Under the evidence before the court and the rulings of this court, to which we will hereafter refer, we are of the opinion the trial court was justified in the conclusion it reached. The evidence of the plaintiff herself, corroborated by other testimony, shows that the services rendered were unusual, arduous, and disagreeable. Her testimony further shows that the deceased, after she became sick and during her sickness, promised plaintiff to make it right. When plaintiff married she requested her to come and live with her. It is not clear from the evidence that the deceased intended the deed to the home as a consideration for plaintiff's services, in view of the fact that she made substantial gifts to the other children, who had rendered no services at

all. Furthermore, it appears from the testimony of both plaintiff and her husband that the deceased attempted to give to plaintiff a promissory note of the face value of $3,000, which failed as a gift because a legal formality was not complied with. This note, for that reason, was by plaintiff turned over to the estate. Further testimony is in the record to the effect that the deceased recognized the value of plaintiff's services, and expressed an intention to give all her estate to plaintiff after reserving sufficient to provide for herself a decent burial. In view of all this, as before suggested, we are of the opinion the court was justified in denying the motion for nonsuit, even admitting, for the sake of argument, that appellant's theory of the law in this class of cases is correct.

Appellant also insists that the court erred in entering judgment for the plaintiff, for the reason that the evidence is insufficient, in that it shows that the deceased and plaintiff were grandmother and grandchild, and that there was no express contract on the part of the deceased to pay for the services rendered or goods furnished, or that the deceased ever had any intention to pay therefor, except as she voluntarily paid for them by deeding the plaintiff her home. Appellant insists that the evidence shows the services were gratuitous.

What we have said in passing upon the motion for nonsuit is equally applicable here, and need not be repeated.

Appellant contends that in cases of this kind, in view of the relationship existing, there must be an express contract to pay for the services rendered and goods furnished in order to overcome the presumption that the services       2 were gratuitous. In support of this view he cites 9 Cyc., commencing on page 273 and ending on 274, and a note thereto. We quote the text and the note as the same appears in appellant's brief:

"Where one renders services for another, or supports another, the relationship of the parties is of great weight in determining their intention for the purpose of saying whether a contract to pay is to be implied. The question in all cases is one of intention, but relationship or membership in the family may rebut the ordinary presumption of contractual intention.

Appeal from Third District.

"In the case of parent and child, or persons who stand towards each other in loco parentis, even though the child may have attained majority, it is to be presumed that support furnished or services rendered were intended to be gratuitous, and there can be no recovery therefor without proof of an express contract to pay, or circumstances showing that compensation was expected and intended."

In answer to this contention it is sufficient to say that this court in *Mathias v. Tingey*, 39 Utah, 561, 118 Pac. 781, 38 L. R. A. (N. S.) 749, rejected the doctrine that an express contract or promise to pay, in such cases, is necessary, and on the contrary, adopted, as we believe, the more reasonable and better sustained doctrine that the promise to pay need not be expressed, but may be inferred from circumstances. The facts in that case are so nearly analogous to the facts in the case at bar as to make the opinion therein controlling upon the main question presented by this appeal. It would serve no useful purpose to make a detailed comparison. The opinion, by Mr. Chief Justice Frick, is lucid and to the point that the promise on the part of the mother to pay a daughter for services rendered in taking care of the mother during her last sickness and for some time previous may be inferred from circumstances. The opinion cites the authorities upon which the court relied. The judgment of the trial court allowing plaintiff compensation in that case was affirmed.

In addition to the Utah case above referred to, respondent cites many cases more or less in point. See specially 11 L. R. A. (N. S.) note 890; *In re Rohrer's Estate*, 160 Cal. 574, 117 Pac. 672, Ann. Cas. 1913A, 479.

Appellant in the instant case insists that the findings are inconsistent, contradictory, and unintelligible, and are therefore insufficient to support the judgment. This contention is not entirely without merit, if we limit our consideration to the language of findings Nos. 1 and 2, which read as follows:

"(1) That from October 12, 1913, to April 22, 1916, at Bingham, in Salt Lake County, Utah, plaintiff, at the request of said deceased, Esther Byrne, furnished board and medicine and rendered services in caring for and in washing the clothing for said deceased, Esther Byrne; that during

said time she required great care and constant watching and nursing, and very disagreeable and menial labor, in keeping her clean, and washing her clothing and bedclothing, and cleaning her room, and that plaintiff performed this labor and services; that during the last six months of her life said deceased was helpless and confined to her bed and room, and required constant care and nursing and washing and cleaning, a most disagreeable, arduous, and menial labor; that the plaintiff rendered and performed all these menial services and labor; that said deceased during all of said time was well cared for by plaintiff, and the services and labor rendered and performed by plaintiff for deceased were very unusual and extraordinary; that there was no express contract between plaintiff and deceased that said services should be paid for by deceased; that there is no evidence of any intention on the part of the deceased to pay for said services, except the transfer by her of certain real property to plaintiff before her death; that said services so performed and rendered by plaintiff to said deceased were of the reasonable value of $390.

"(2) That said plaintiff, during the time of rendering the said services and performing said labor, expected to receive compensation therefor, and the said deceased expected and intended to compensate and pay said plaintiff for said services and labor and the care and board and support bestowed upon her by plaintiff; that the said deceased promised and agreed to compensate plaintiff for said board, services, labor, and care by leaving plaintiff her property after her death."

From the foregoing it will appear that in finding No. 1 the court finds there was no express contract between plaintiff and deceased that the services of plaintiff should be paid for by deceased, and no intention on the part of deceased to pay for such services, except by the transfer of certain real property before her death; while in finding No. 2 the court finds that plaintiff expected to receive compensation, and that the deceased expected and intended to compensate plaintiff, and promised and agreed to compensate her by leaving plaintiff property available after the death of deceased.

The fact that these two findings, considered alone, may be so confusing, and apparently contradictory, as to render their meaning unintelligible, does not necessarily vitiate the judgment based thereon. The question in such case is, do the findings as a whole indicate what the court intended, and from them, considered as a whole, can the intention of the court be satisfactorily determined?

In finding No. 4 the court found that deceased failed to make any substantial provision or otherwise to compensate plaintiff for the services. In finding No. 6 the court found that there was due and owing plaintiff by the defendant the sum of $390, with interest thereon. Therefore this much at least can be deduced from the findings: That the services were of the reasonable value of $390; that the deceased was to pay in property before her death; that she was to pay in property after her death. By the fourth finding the court found she did neither, and by the sixth the court found the above amount was due and owing the plaintiff.

The findings are inartistic, confusing, and apparently contradictory, but a reasonably careful analysis, with the view of ascertaining their meaning, renders them sufficiently intelligible to support the judgment of the court.

Finally, defendant contends that the defendant is entitled to judgment for the sum of $395 as rental for the home from October 12, 1913, when plaintiff married, to December 29, 1915, when deceased deeded plaintiff the property, at the rate of $15 per month. As to this item the court found that deceased at the time the house was built gave the same to plaintiff as a home, and afterwards, in December, 1915, confirmed the gift by making a deed therefor. This finding is sustained by the evidence.

The court did not err in dismissing the counterclaim.

We find no error in the record.

The judgment is affirmed, at appellant's costs.


FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.