## SPARKS v. HINCKLEY.

No. 4832. Decided December 4, 1931. (5 P. [2d] 570.)

*J. Louis Brown,* of Salt Lake City, for appellant.

*Richards & Mitchell,* of Salt Lake City, and *W. A. C. Bryan,* of Nephi, for respondent.

EPHRAIM HANSON, J.

Defendant's demurrer to the complaint was sustained, and plaintiff declined to amend. Thereupon the action was dismissed, and plaintiff appeals. The only question before this court is the sufficiency of the complaint as against the defendant's demurrer.

In the complaint it is alleged that the defendant is the duly appointed administratrix of the estate of Thurza M. Vickers. Then it is alleged:

"II. That plaintiff is a nephew of said Thurza M. Vickers, also known as Thurza M. Harley, deceased, and for many years during the life time of said deceased, to-wit: From the time plaintiff was 10 years old until he arrived at the age of 22 years, he resided with the said deceased as a member of her household, and during said period performed valuable services and labor for said decedent, and during the time that he so resided with said decedent he worked for other persons at her request and earned money for such services which was collected by said deceased.

"That the earnings of the plaintiff both while working for, and upon the premises of, said deceased and while working for other persons, at her request, were used by said deceased in acquiring and maintaining the real estate which is hereinafter described, and which was left by said decedent at the time of her death as a part of her estate.

"That the earnings of the plaintiff, as aforesaid, in excess of any reasonable charge for his board and keep, and which was used by the said Thurza M. Vickers, deceased, in the acquiring and maintaining of the said real estate, as aforesaid, amounted to a sum in excess of $1,500.00.

"III. That the said decedent during her life time always recognized her obligation to the plaintiff for his earnings which she had used in the acquirement and maintenance of said property, as aforesaid, and that the plaintiff had an interest in and to said property to the extent of his earnings which had been invested in the same, and always expressed her intention of conveying to this plaintiff such of said property as would represent his interest therein, either by deed during her life time or by remembering the said plaintiff in her will, and devising the same to him, and for that reason plaintiff never pressed his claim to an interest in said property during the life time of said deceased."

The complaint also contains a description of the property involved, and allegations to the effect that the deceased had died intestate, that plaintiff's claim had been duly presented to the administratrix, and that it had been rejected by her.

The prayer is that it be adjudged and decreed that plaintiff has an interest in the property to the extent that his services and money were invested in the same, and that such interest be satisfied by a conveyance to him of a pro-

portionate amount of said property or by payment to him of such part of the proceeds from the sale thereof as he was entitled to.

The defendant filed a general demurrer and a demurrer upon the ground that the complaint was uncertain in several specified respects. The demurrer was not argued to the court, and it is not made to appear upon what ground the court sustained the demurrer. If either the general or special demurrer should have been sustained, the ruling of the court must stand.

We must look to the allegations of paragraph II in order to ascertain if a cause of action is stated. It is not contended by appellant that the allegations contained in paragraph III aid in the statement of a cause of action. For these allegations nothing is claimed except that they avoid "laches with which he (plaintiff) might otherwise be chargeable," and "as showing that he has no adequate remedy at law."

It is the contention of appellant that his complaint contains allegations "showing the existence of a resulting trust or a constructive trust or an equitable lien in his favor" in the land described "to the extent that his services and money were invested in the same."

The error of appellant consists in his assumption that the complaint contains an allegation that money belonging to him was used by deceased in purchasing and maintaining the real estate. The allegation is "that the earnings of the plaintiff * * * were used by decedent in acquiring and maintaining the real estate." Inasmuch, however, as it appears from the complaint that the decedent stood in loco parentis to appellant during the time he worked for her and for other people at her request, and so earned money, she was entitled to all such earnings. Such earnings belonged to decedent and not to appellant. The law is well settled to that effect.

"A person standing in loco parentis is entitled to the services and earnings of the child, and the child cannot maintain a claim against such person for services rendered in the absence of an express or implied agreement to pay therefor, the presumption being that such

services were gratuitous." 46 C. J. 1336; *Lantz* v. *Frey*, 19 Pa. 366; *Macchi* v. *La Rocca*, 54 Cal. App. 98, 201 P. 143.

"In the case of near relatives or members of the same family, living together as one household, the law regards personal services rendered, and board and lodging and other necessaries and comforts furnished, as gratuitous, and in the absence of an express agreement to pay for the same or facts and circumstances from which an agreement can be inferred, there can be no recovery therefor." 40 Cyc. 2815.

"It is elementary that a parent having the legal control and custody of his unemancipated minor child has a right to its services and earnings, unless there has been an express or implied relinquishment of such right." 46 C. J. 1281. And a person standing in loco parentis to a child has the same rights, duties, and liabilities as a parent. 46 C. J. 1336; *Eaves* v. *Fears*, 131 Ga. 820, 64 S. E. 269; *Starkie* v. *Perry*, 71 Cal. 495, 12 P. 508.

The appellant very properly concedes that Mrs. Vickers, the decedent, stood in loco parentis to the appellant. But, inasmuch as it is shown by the complaint that the appellant resided with the deceased as a member of her household until he arrived at the age of twenty-two—one year after attaining his majority—the question is suggested whether such status or relation as parent and child terminated because of the fact that appellant had attained his majority; and, because of such termination, whether the wages earned and the services performed by appellant thereafter are controlled by the principles hereinbefore announced.

Where one stands in loco parentis to another, the rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and child. *Young* v. *Hipple*, 273 Pa. 439, 117 A. 185, 25 A. L. R. 1541, p. 1545. The law will not presume any change in the existing relation of parent and child from the mere fact that the child has attained his majority. *Brown* v. *Ramsay*, 29 N. J. Law, 117. The right of the parent to the services of his child ceases on the child attaining twenty-one years, and it is then the right of the child to receive his own wages, but arriving at the age of twenty-one does not ipso facto result in his emancipation. The child may

elect to remain with the parent, and, if it so remains and receives sustenance and support from the parent, the parent will be entitled to the child's wages. *Brown* v. *Ramsay,* supra. We think this to be the rule followed with substantial unanimity by the decisions. In *Einolf* v. *Thompson,* 95 Minn. 230, 103 N. W. 1026, 104 N. W. 547, in support of the rule in such cases, the court stated:

"The general rule deducible from the authorities is that where a child after arriving at majority continues to reside as a member of the family with a parent, or with one who stands in the relation of parent, * * * the presumption is that no payment is expected for services rendered or support furnished by one to the other. This presumption is not, however, conclusive, and may be overcome by proof either of an express agreement to pay, or of such facts and circumstances as show satisfactorily that both parties at the time expected payment to be made." *Donovan* v. *Driscoll,* 116 Iowa 339, 90 N. W. 60.

The appellant had the right to claim his wages and to demand compensation for his services, but he would then have rested under the obligation to maintain and support himself. He might, as a matter of right, have entered into an agreement with Mrs. Vickers that he was to collect his own wages and to be paid for the services rendered to her, and in return to pay for his support and maintenance. Such an arrangement would have terminated the status or family relation theretofore existing between them. As no such an arrangement is shown by the complaint, or facts from which it might be inferred that Mrs. Vickers was to hold or invest for appellant the money received for his wages and to pay him for the services rendered, the case presented by the complaint must be treated as one where the relation of parent and child still existed.

This court, in *Mathias* v. *Tingey,* 39 Utah 561, 118 P. 781, 38 L. R. A. (N. S.) 749, and in *Wilkin* v. *O'Brien,* 53 Utah 1, 176 P. 853, held that the services of a child while living with a parent are usually presumed to be gratuitous, and a promise to pay for them will not be implied from their mere rendition, yet that the parent might contract to pay for such services, and that such contract need not be express,

but that the promise to pay might be inferable from circumstances. In the complaint here, however, there is no allegation of an express promise to pay, nor are any facts or circumstances pleaded which take the case out of the general rule.

The complaint therefore does not state facts sufficient to show a trust, express or implied, for the reason, among others, that it is not shown that any money to which plaintiff was entitled was used by Mrs. Vickers in purchasing or maintaining the property. For the same reason the complaint does not show that plaintiff is entitled to an equitable lien on the property to an amount equal to the amount of his earnings used in the purchase of the property. Counsel cites 3 Pomeroy, Equity Jurisprudence (4th Ed.) § 1051; *Thum* v. *Wolstenholme,* 21 Utah 446, 61 P. 537; *Van Natta* v. *Heywood,* 57 Utah 376, 195 P. 192, in support of his contention. We think these citations are wholly inapposite to the question here. Mr. Pomeroy, in the section cited, deals with the wrongful appropriation of another's funds and their conversion into another form. But Mrs. Vickers, as we have seen, did not wrongfully appropriate the earnings of appellant. In *Thum* v. *Wolstenholme,* supra, it appeared that the manager of a bank used its funds to pay his life insurance premiums. The court held that, if such funds could be traced "into the policy," a court of equity must declare a lien for such sums so wrongfully appropriated on the proceeds of the policy. In *Van Natta* v. *Heywood,* supra, the question decided was whether or not the evidence supported an allegation that decedents had by an express parol contract agreed with plaintiff that they would will him their estate if he would live with them. It was held that the evidence adduced by plaintiff amply supported a finding that such a contract had been made. No question of the sufficiency of the pleadings was presented. In the instant case the complaint does not show that any contract was entered into between plaintiff and decedent.

There is nothing in either of these cases lending support to the contention that the complaint herein states facts entitling appellant to a decree declaring an equitable lien.

For these reasons it was proper for the court to hold that the general demurrer was well taken, because the complaint did not state facts sufficient to constitute a cause of action.

The judgment appealed from is affirmed, with costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.