## Bennett's Estate

*Benjamin F. Black*, for exceptant.
*Herbert F. Laub*, contra.

STEWART, P. J., June 28, 1937.—The mother of decedent, as administratrix, filed an account. Walter Gosling filed exceptions to her account because she would not pay him $226 expended by him for the funeral of decedent, and $3 expended by him for the hire of a car for the funeral. The auditor, in a very carefully prepared report, sustained claimant's exceptions and allowed those sums. The mother, the administratrix, filed the following exceptions to the auditor's report:

1. Exception is taken to the allowance by the auditor of the claim of Walter Gosling for reimbursement in the amount of $226, paid to Harry L. Dillinger for funeral expenses of decedent, as itemized and set forth in exhibit no. 2.

2. Exception is taken to the allowance by the auditor of the claim of Walter Gosling for reimbursement of payment to Bruno Steinke in the sum of $3 for the hire of an automobile for decedent's funeral, as set forth in exhibit no. 1.

3. Exception is taken to the placing by the auditor of the costs of audit on the small amount for distribution in decedent's estate, instead of placing them upon Walter

Gosling, exceptant to the account of administratrix of said decedent.

4. The auditor having found as a fact that Walter Gosling assumed the relationship of loco parentis of decedent and always regarded him with the same care and affection as if he were one of his natural children, he erred in allowing the claims of Walter Gosling for reimbursement as aforesaid, because it is the duty of a parent to pay for the funeral expenses of his minor children in the absence of an agreement in writing by someone else to pay for same, and no such agreement exists in this case.

From the auditor's findings of fact it appears that the minor was 15 years of age and died at St. Luke's Hospital in Bethlehem. He was survived by his mother and three sisters. The third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth findings of fact are as follows:

3. Exceptant, Walter Gosling, a resident of the City of Bethlehem, with the consent of the administratrix, took deceased when an infant into his household and raised and cared for him until the date of his death.

4. Exceptant raised and cared for the child as an act of charity and good neighborliness to deceased and the administratrix.

5. Deceased, throughout virtually his entire lifetime, was in ill health and of little pecuniary aid to exceptant.

6. Exceptant assumed the relationship of locus parentis of the deceased and always regarded him with the same care and affection as if he were one of his natural children.

7. Exceptant, upon the death of deceased and without having communicated with administratrix, entered into an agreement in his own name with Harry Dillinger, a funeral director in the City of Bethlehem, for the burial of deceased.

8. The administratrix, upon learning of the death of deceased via the newspapers, called upon exceptant at his home and was then and there informed by exceptant of the funeral arrangements as made.

9. Prior to the funeral and in the presence of exceptant, the administratrix stated, "the funeral bill would be paid before the boy is under ground."

10. At no time either prior or subsequent to the burial did the administratrix object to exceptant's having assumed charge of the funeral arrangements nor to the reasonableness of the charges therefor.

Those findings of fact are supported by the testimony which we have carefully read. It is only necessary to supplement them by a further finding from the evidence that the father of this boy, at the time of his birth, was confined in the Northampton County Prison on a charge of burglary, and subsequently the boy's mother and father were divorced. The father then disappeared, and his present whereabouts are unknown. In other words, it was practically conceded that at the time of the boy's death his father had no estate. It also appeared that Mr. Gosling and his wife took decedent into their possession within a few days after he was born and had him in their possession during decedent's life of 15 years, with the exception of the time the boy was in a sanitarium at Atlantic City, and that during that entire time neither his mother nor his father exercised any control over him or maintained him. The mother did visit him infrequently, and gave him gifts of trivial value. The sixth finding of fact, supra, that the relationship of loco parentis existed between decedent and Mr. Gosling, cannot be disputed. In our judgment the exact question involved in the present controversy is whether a minor's estate can be held liable for the payment of his funeral expenses where the same have already been paid voluntarily by a person standing in loco parentis to him. The learned auditor, while finding as a fact that the relationship existed, was of opinion that it terminated at death, and that Mr. Gosling would not be liable for the funeral expenses on that account, and for the further reason that under the law he could not claim any part of the minor's estate. He said:

"In Young v. Hipple, 273 Pa. 439, Mr. Justice Simpson states at page 447:

" 'Upon a consideration of the decisions in other branches of the law, it appears that where one stands in loco parentis to another, the rights and liabilities arising out of that relation, are, as the words imply, exactly the same as between parent and child. Thus the rule that, for services rendered, a parent cannot recover from a child, or a child from a parent, in the absence of an express contract to pay for them, even though the child is of full age and lives in a home of his own . . . the reason being because "It was a family relation entirely equivalent, while it lasted, to that of parent and child; and the law implies no mutual responsibilities inconsistent with that relation": Lantz v. Frey, 19 Pa. 366-7.' The auditor, however, is of the opinion that the relation that existed between exceptant and deceased was not as rigid a concept as may be contended by a reading of the words of the late Mr. Justice Simpson above quoted."

In other words, the auditor does not attach any significance to the "liabilities" appearing in that definition. In our judgment we think that word is as important as the word "rights". An excellent definition is found in 46 C. J. 1334, sec. 174:

"A person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. The assumption of the relation is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation."

The definition speaks of the "obligations incident to the parental relation", "and the rights, duties, and liabilities", and says they are the same as those of a lawful parent. What then is the situation? Mr. Gosling was exactly in the position of a lawful parent at the minor's

death, and he himself recognized the obligation by voluntary payments. There was no contract on the part of the mother when she came to the house before the funeral, and her declaration that "the funeral bill would be paid before the boy is under ground" did not make her liable as an individual or as an administratrix: France's Estate, 75 Pa. 220.

Both counsel, with commendable zeal, have cited many cases on the general subject, and they are somewhat contradictory. We shall not discuss many of them. Such a study, while interesting, would throw little light on the one subject here involved. It is well stated in 2 Addison on Contracts (8th ed.), sec. 1029, with reference to a burial by a stranger that the law implies a contract on the part of the executor having "assets sufficient for the purpose . . . to pay for a funeral suitable to the station in life . . . furnished and provided by a third person in the absence of the executor, and without his knowledge and concurrence; and the law implies a request from the executor to the stranger who has undertaken the necessary duty to do what he has done, although in point of fact he gave no orders and made no promise." See also Jack's Estate, 275 Pa. 405, where the funeral expenses were paid by "an old friend"; Ennis' Estate, 76 Pa. Superior Ct. 292, where they were paid by a niece; Sinnott's Estate, 15 Dist. R. 873, where the payment was made by an aunt; but those cases do not apply to this.

It is unnecessary to cite authorities to show that a father must bury his minor child and pay the expenses of a funeral according to his station in life. Those interested will find an interesting discussion in 1 Sharswood's Blackstone's Commentaries 446, which goes at length into the foundation of the obligation. A minor's estate is never subject to the payment of the minor's funeral expenses where the father is of sufficient ability to pay them. The exceptions to the general rule are set forth in Hunter's Estate, 8 D. & C. 533, and Mizishko's Estate, 28 D. & C. 362. The instant case, however, is in law a case of a

parent and child, and the fact that the minor had an estate does not relieve the parent from those expenses which the law attaches to the relation itself.

The same rule applies in the case of a husband and wife. In Waesch's Estate, 166 Pa. 204, the syllabus is:

"A husband is primarily liable for medical attendance and other expenses incident to his wife's illness and death, although she has a separate estate. If the husband is insolvent the wife's estate is liable, but if there is any balance for distribution, such expenses should be deducted from the husband's distributive share of his wife's estate."

In Mitchell's Estate, 79 Pa. Superior Ct. 208, the syllabus is:

"A surviving husband is liable for the funeral expenses of his deceased wife. A direction in her will that the funeral expenses shall be paid from her estate is in relief of his legal liability, and is in effect a legacy to him. Upon an election by the husband to take against his wife's will, he cannot claim the benefit of the direction in the will for payment of funeral expenses, and the executor will not be allowed credit for such expenditures." See also Conn's Estate, 65 Pa. Superior Ct. 511.

The claims of Walter Gosling are disallowed. The learned auditor imposed the costs on the estate, and his action in that respect was the subject of the third exception. The claims made by Mr. Gosling were not frivolous or unsupported claims. The question presented by the claims is not an easy one for decision. The excellent discussion of the learned auditor and the contentions made in the briefs show that the matter should be judicially determined. We examined this matter at some length in Oplinger's Estate, 13 Northamp. 274. The syllabus of that case is:

"A party securing the appointment of an auditor and afterwards being unsuccessful in proving his claim, must pay the costs of the audit unless he satisfies the court that he had probable cause to ask for the auditor. The prob-

able cause which will relieve the party in such case must be such a contention started and conducted in good faith, as reasonably calls for the opinion and judgment of a court, as where there is a mixed question of law and fact, or where there are circumstances sufficient to justify an investigation, or where the facts are peculiarly in the possession of the other party."

We followed that decision in Schockency Estate, 18 Northamp. 133, and Angle's Estate, 22 Northamp. 219. The estate must pay the costs of the audit.

And now, June 28, 1937, the first, second, and fourth exceptions are sustained; the third exception is dismissed; and, as corrected, the auditor's report is confirmed absolutely.