2019 UT App 48

## THE UTAH COURT OF APPEALS

CAROL H. PETERSON,
Appellee,
*v.*
MARK A. PIERCE AND JULIE D. PIERCE,
Appellants.

Opinion
No. 20160778-CA
Filed March 28, 2019

Fourth District Court, Fillmore Department
The Honorable Jennifer A. Brown
No. 130700033

Dale B. Kimsey, Attorney for Appellants

Lewis P. Reece and Jonathan P. Wentz, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Mark A. Pierce and Julie D. Pierce appeal from the judgment of the district court in favor of Carol H. Peterson, trustee of the Larry A. and Carol H. Peterson Family Trust. The district court determined that an easement existed for a joint driveway between the parties' properties and reformed the parties' deeds to rectify a mistake in the deeds. We affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND

¶2     Appellants Mark A. and Julie D. Pierce and Appellee Carol H. Peterson, trustee of the Larry A. and Carol H. Peterson

Family Trust, own adjacent properties in Millard County, Utah. Peterson acquired her property (Peterson Parcel) in July 1997. The Pierces acquired the property in which their home sits (Parcel 1) in June 1989, and property immediately to the west (Parcel 2) in May 1997 (collectively, the Pierce Parcel). *See infra* Appendix. The Pierce Parcel and the Peterson Parcel were all previously owned under common ownership by Harold H. Hatton and Flora Allie G. Hatton, Peterson's parents and Julie Pierce's grandparents. The Peterson house is on the Peterson Parcel. This house was built in approximately 1975 by Harold Hatton after he had retired from farming, and he lived there until his death in 1996. The Pierces' house is located on Parcel 1 of the Pierce Parcel and was built in the late 1930s.

¶3     The Peterson Parcel is located directly north of the Pierce Parcel, and along the northern property line of the Pierce Parcel is a two-rutted lane (Two Rutted Lane) that has been in existence since the late 1930s and has been used as a joint driveway. Harold Hatton maintained the Two-Rutted Lane and used it as a driveway to access the west side of the property during his lifetime. At the time the Hattons, as trustees of the Harold H. Hatton Revocable Family Trust (Hatton Trust), conveyed Parcel 1 of the Pierce Parcel to the Pierces in 1989—and even after the line was surveyed and marked in 1997—nobody was clear about the exact boundary between the Pierce Parcel and the Peterson Parcel. Moreover, when the Hatton Trust conveyed Parcel 1 to the Pierces, there was a need to convey an additional seven feet of property by way of an easement for frontage so that Parcel 1 could be subdivided from the main parcel. The conveyance deed from the Hatton Trust to the Pierces contains an "Easement for Joint Driveway." Specifically, the Pierces' 1989 Warranty Deed states:

> SUBJECT TO AND TOGETHER WITH an Easement for a joint driveway over and across the following described property: Beginning 70 feet North of the Southeast corner of Lot 7, Block 49, Plat A, Fillmore City Survey, thence North 7 feet;

> thence West 194 feet; thence South 7 feet; thence East 194 feet to the point of beginning.

¶4     The conveyance deed from the Hattons, as trustees for Parcel 2 of the Pierce Parcel, contains a similar "Easement for Joint Driveway." Specifically, the Pierces' 1997 Quitclaim Deed states:

> SUBJECT TO AND TOGETHER WITH an Easement for a joint driveway over and across the following described property: Beginning 194 feet West and 70 feet North of the Southeast corner of Lot 7, Block 49, Plat A, Fillmore City Survey, thence North 7 feet; thence West 139.5 feet; thence South 7 feet; thence East 139.5 feet to the point of beginning.[1]

¶5     However, the district court found the inclusion of the "joint driveway" language in the deeds was in error. Given the historic use of the Two Rutted Lane, and the need to use it to access the west portion of the Peterson Parcel, the court found that Harold and Allie Hatton intended to convey a seven-foot easement to the Pierces solely for frontage, and the Hattons intended to reserve the use of the Two Rutted Lane as the joint driveway. The court further found that the Pierces were aware that the south seven feet of the Peterson Parcel was for frontage purposes and the Two Rutted Lane was to be kept and preserved as a joint driveway.

¶6     Following the death of Harold and Allie Hatton in 1996, Lynn Hatton and Betty Jo Dunnell became the successor trustees

---

1. The Pierces actually received two deeds in May 1997 for Parcel 2. The first deed, an unrecorded special warranty deed, incorrectly described the east-west distance of the lot and the easement. The Hatton Trust subsequently conveyed a quitclaim deed to Parcel 2, containing the correct distance of 139.5 feet.

to the Hatton Trust. In connection with the sale of the Peterson Parcel to Peterson, the Hatton Trust requested a survey of the property. The survey was not completed until after Peterson purchased the Peterson Parcel. And, even after the survey flags had been placed, the dispute about the actual boundaries of the property remained unresolved.

¶7 Peterson's deed is "SUBJECT TO all easements, reservations, restrictions and rights-of-way of record or which may be ascertained from an inspection of the property." Peterson took title to the Peterson Parcel with the full expectation that she would have access to the west of her property by using the Two Rutted Lane, and she did in fact use it as a joint driveway as often as she needed, and she cared for it as if it were her own property. Though there was a continuing dispute between the Petersons and the Pierces, Peterson was able to access the west portion of the Peterson Parcel by using the Two Rutted Lane until the Pierces constructed a fence on the north edge of their property in July 2013. Without the use of the Two Rutted Lane, Peterson had great difficulty accessing the west portion of her property. Peterson brought suit after the fence was erected. After a five-day bench trial, the district court entered judgment in favor of Peterson.

¶8 Finding sufficient evidence of a mutual mistake in the deeds as to the description of the joint driveway and seven-foot frontage, the district court reformed each of the relevant deeds to reflect "that the joint driveway is not the seven foot strip north of [the Pierces'] property. Rather it is the Two Rutted Lane." The Pierces appeal.

ISSUES AND STANDARDS OF REVIEW

¶9 First, the Pierces contend that Peterson's claims were untimely and the district court erred in determining that her claims were not barred by the statute of limitations or the

doctrine of laches.[2] "The application of a statute of limitations is a legal determination, which we review for correctness." *Griffin v. Cutler*, 2014 UT App 251, ¶ 14, 339 P.3d 100. To the extent that a statute of limitations analysis involves subsidiary factual determinations, we review those determinations for clear error. *Id.* "Whether laches applies is a question of law, which we review for correctness." *Veysey v. Nelson*, 2017 UT App 77, ¶ 5, 397 P.3d 846. "The application of laches to a particular set of facts and circumstances presents a mixed question of law and fact." *Id.* (quotation simplified). "Within that framework, we review the [district] court's conclusions of law for correctness and will disturb its findings of fact only if they are clearly erroneous." *Id.* (quotation simplified).

¶10 Second, the Pierces contend that the district court misinterpreted "key deed language" and the court therefore erred when it found that there was a mutual mistake warranting reformation of the deeds.[3] "Reformation of a deed is a proceeding in equity." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 35, 96 P.3d 935 (quotation simplified). "[T]he proper standard of review for a [district] court's findings of fact for cases in equity is the same as for cases at law, namely the clearly erroneous

---

2. The Pierces also argue that the district court misapplied a statute of repose. This issue has been inadequately briefed, obviating the need to address the applicable standard of review. *Cheek v. Clay Bulloch Constr. Inc.*, 2016 UT App 227, ¶ 14 n.3, 387 P.3d 611. We further decline to address the merits of this issue on appeal. *See Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14.

3. The district court concluded, in the alternative, that Peterson had acquired an easement by implication or an easement by necessity to use the Two Rutted Lane, and the Pierces also challenge these conclusions on appeal. Because the district court correctly determined that a mutual mistake had occurred, and that the mistake necessitated reformation of the deeds, we do not need to reach these issues.

standard. Moreover, in both equity and law, we review the [district] court's conclusions of law for correctness." *Id.*

¶11    Third, the Pierces contend that the district court erred in awarding attorney fees to Peterson. "The award of attorney fees is typically a matter of law, which we review for correctness." *Paul deGroot Bldg. Servs., LLC v. Gallacher*, 2005 UT 20, ¶ 18, 112 P.3d 490. However, "where the fees are predicated upon findings of fact, . . . we review the award of fees for an abuse of discretion." *Id.*

ANALYSIS

I. Timeliness of Action

¶12    The Pierces contend that the district court failed to apply the relevant statute of limitations and the doctrine of laches that would bar Peterson's claims. We address these arguments in turn.

A.    Statute of Limitations

¶13    The Pierces first assert the district court "misapplied statutes relating to mutual mistake," specifically, the applicable statute of limitations. The Pierces relatedly argue that Peterson failed to timely bring her reformation claims.

¶14    Utah Code section 78B-2-305 provides, in relevant part, "An action may be brought within three years: . . . for relief on the ground of fraud or mistake; except that the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code Ann. § 78B-2-305(3) (LexisNexis 2012).

¶15    The district court observed that Peterson "or her predecessor could have brought a claim to reform the deed after discovering the survey line between the Peterson Parcel and Parcels 1 and 2." But the court found that Peterson's predecessor,

Larry Peterson, had "clearly claimed that he had an absolute right to use the joint driveway as though it belonged to both [the] Petersons and [the] Pierces." Given that the Petersons had continued to use the Two Rutted Lane "as though they had an absolute right to use the same" and that the Pierces "did not block that right in any permanent or real way until they put up the fence in the summer of 2013," the district court concluded that the three-year statute of limitations did not begin to run until the summer of 2013.[4] For the same reason, the court determined that Peterson's claim was not barred by the doctrine of laches. *Infra* ¶¶ 21–24.

¶16 Based on section 78B-2-305(3), the Pierces assert that "[the] Hattons and Petersons had three years to bring [an] action after discovery of the facts constituting mistake." Relying on the district court's finding that Peterson "or her predecessor could have brought a claim to reform the deed after discovering the survey line, in 1997," the Pierces claim that "it is clear that the [district] court erred in allowing Peterson['s] claim of mutual mistake." In other words, the Pierces' claim that the three-year statute of limitations began to run in 1997, when the survey conducted in connection with the sale of the Peterson Parcel to Peterson was completed.[5] But as Peterson correctly observes, the

---

4. Peterson filed suit in October 2013.

5. As part of this argument, the Pierces assert that the Hattons "recorded the Parcel [1] deed with a right of first refusal [for] Parcel [2] on June 13, 1989." Citing Utah Code section 57-4a-2, the Pierces then assert that "[a] recorded document imparts notice of [its] contents *despite any defects* and a recorded easement deed, from the time of recording, imparts notice of any questions regarding the easement." To adequately brief an argument, the appellant's brief "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). An argument is inadequately briefed "when the overall analysis of

(continued…)

Pierces' "citation to the [district] court's analysis in this regard is incomplete." Indeed, the Pierces virtually ignore the district court's findings and focus only on evidence favorable to them.

¶17   Relevant here, the district court found:

(1)   Mark Pierce told the surveyor that the purpose of the seven-foot easement north of Parcel 1 was for frontage.

(2)   Julie Pierce testified that the seven-foot easement was never used as a joint driveway and that the purpose of the seven-foot easement was for frontage only.

(3)   Although Mark Pierce testified that the surveyor placed survey flags on the corners, there was no evidence the flags were placed in such a way that an ordinary person would understand the purpose of their location.

(4)   When Mark Pierce and Larry Peterson met to discuss the survey, Larry Peterson did not agree with Mark Pierce as to the property line.

(5)   The Petersons, as well as their grantors, the trustees of the Hatton Trust, understood that

---

(…continued)
the issue is so lacking as to shift the burden of research and argument to the reviewing court." *CORA USA LLC v. Quick Change Artist LLC*, 2017 UT App 66, ¶ 5, 397 P.3d 759 (quotation simplified). Such is the case here—analysis of section 57-4a-2 and its application to the facts of this case are wholly lacking. We therefore decline to address this argument.

the Two Rutted Lane was the joint driveway referenced in the Pierces' deeds.

(6) The Petersons took title to the Peterson Parcel "with the full expectation and reliance" that they would have access to the western end of the property through the Two Rutted Lane.

(7) The Petersons used the Two Rutted Lane as often as needed and cared for it as if it was their own property.

(8) Mr. Peterson mowed the grass strip between the two ruts. The Petersons' son continued this practice after Mr. Peterson died.

(9) Every fence surrounding the original Hatton Trust parcel was several feet off from the survey line.

(10) The only "established" common driveway between the Peterson Parcel and Parcel 1 that was actually used as a common driveway was the Two Rutted Lane.

(11) After Mr. Hatton died and the Petersons received the Peterson Parcel, the Petersons regularly used the Two Rutted Lane without asking for permission from the Pierces.

(12) The Petersons' son frequently used the Two Rutted Lane, and he helped maintain it after Mr. Peterson died.

(13) Although the Pierces attempted to prevent the Petersons from using the Two Rutted Lane after Mr. Peterson's death, these

> attempts were unsuccessful until the Pierces constructed a fence on the northern edge of their property (Parcel 1) in July 2013.
>
> (14) The Hattons understood that the joint driveway was the Two Rutted Lane, and neither the Hattons nor the Pierces knew the correct boundary line between the properties.

¶18 In sum, the district court ultimately concluded that Peterson claimed that they had an absolute right to use the Two Rutted Lane, that they used it as often as they needed, and that the Pierces were unsuccessful in blocking that right in any permanent or real way until they erected a fence in the summer of 2013.

¶19 "To demonstrate clear error in the [district] court's factual findings, the appellant must overcome the healthy dose of deference owed to factual findings by identifying and dealing with the supportive evidence and establishing a legal problem in that evidence." *Sandusky v. Sandusky*, 2018 UT App 34, ¶ 25, 417 P.3d 634 (quotation simplified). In order to meet this burden, a party must do more than "simply list[] or rehash[] the evidence and arguments [it] presented during trial or by merely pointing to evidence that might have supported" a more favorable outcome. *Id.* (quotation simplified). Instead, a party "must identify flaws in the evidence relied on by the [district] court that rendered the [district] court's reliance on it, and the findings resulting from it, clearly erroneous." *Id.* (quotation simplified).

¶20 Here, the Pierces do not adequately address the district court's factual findings supporting its conclusion that the statute of limitations did not begin to run until the summer of 2013. Instead, they focus on a single statement by the district court—that Peterson "or her predecessor could have brought a claim to reform the deed after discovering the survey line, in 1997"—to support their statute of limitations argument. This is not sufficient. The Pierces cannot carry their burden of persuasion

merely by pointing to evidence that might have supported findings more favorable to them. Rather, they "must identify flaws in the evidence relied on by the [district] court that rendered the [district] court's reliance on it, and the findings resulting from it, clearly erroneous." *Id.* (quotation simplified). They have not done so, and as a result, they have not carried their burden to show error in the district court's decision regarding the statute of limitations.

B.     Laches

¶21    The Pierces next contend that the district court "misapplied the doctrine of laches." They assert that "[d]uring the ensuing years after the deeds, [they] improved the land, installed underground electrical lines, remodeled their home, and retired on disability in 2007." According to the Pierces, they "rearranged the property to suit their changes of circumstance, having relied on the notion that the easement was located on [the Peterson Parcel] according to the deed language." They assert that "[l]aches bars recovery by plaintiffs, such as Peterson here, for undue delay in seeking relief" and that they would "suffer immensely from their detrimental reliance."

¶22    "The equitable doctrine of laches is founded upon considerations of time and injury. Laches in legal significance is not mere delay, but delay that works a disadvantage to another." *Insight Assets, Inc. v. Farias*, 2013 UT 47, ¶ 17, 321 P.3d 1021 (quotation simplified). "Laches has two elements: (1) a party's lack of diligence and (2) an injury resulting from that lack of diligence." *Id.* ¶ 19 (quotation simplified). Thus, "to successfully assert a laches defense, a defendant must establish both that the plaintiff unreasonably delayed in bringing an action and that the defendant was prejudiced by that delay." *Veysey v. Nelson*, 2017 UT App 77, ¶ 8, 397 P.3d 846 (quotation simplified). The Pierces have failed to do so here.

¶23    Although the Pierces claim that Peterson unreasonably delayed in filing her action, this assertion ignores the district

court's findings. As previously discussed, the district court determined that despite the 1997 survey, Larry Peterson "clearly claimed that he had an absolute right to use the joint driveway as though it belonged to both [the] Petersons and [the] Pierces" and that the Petersons continued to use the Two Rutted Lane "as though they had an absolute right to use the same" until the Pierces erected a fence in the summer of 2013. Indeed, the record demonstrates that the Petersons used the Two Rutted Lane as often as necessary, without seeking permission from the Pierces, and that they worked to maintain the Two Rutted Lane as if it were their own property. Peterson filed suit in October 2013, within a few months after the Pierces erected the fence on the northern boundary of their property that blocked access to the Two Rutted Lane. Thus, we are not persuaded by the Pierces' undue-delay argument.

¶24 Moreover, although the Pierces claim they made improvements to the land and "rearranged the property to suit their changes of circumstance," apart from their general assertion that they will "suffer immensely from their detrimental reliance," the Pierces have failed to explain with any specificity how they were prejudiced by Peterson's alleged undue delay in bringing suit. *See id.*

## II. Mutual Mistake and Deed Reformation

¶25 The Pierces contend that the district court erred when it found that there was a mutual mistake warranting reformation of the deeds. "Reformation of a deed is appropriate where the terms of the written instrument are mistaken in that they do not show the true intent of the agreement between the parties." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 36, 96 P.3d 935 (quotation simplified). Mutual mistake of the parties provides a ground to seek the equitable remedy of reformation. *Id.* This case involves a mutual mistake by the parties to the original deeds (namely, the Hattons and the Pierces).

¶26  "Mutual mistake of fact may be defined as error in reducing the concurring intentions of the parties to writing." *Id.* ¶ 37 (quotation simplified). Upon a showing of mutual mistake, the intent of the parties controls the reformation of a deed. *Id.* ¶ 38. And "[e]xtrinsic evidence is admissible to assist in determining the intent of the parties." *Id.*

¶27  The Pierces contend that the district court erred in finding that the parties to the original deeds—the Hattons and the Pierces—intended the "joint driveway" language in the Pierces' deeds to refer to the Two Rutted Lane rather than the seven-foot frontage and in reforming the deed to conform with that intent. But this is not exactly what the district court found.

¶28  Based upon the evidence submitted at trial, the district court determined that when the Hattons originally conveyed Parcel 1 to the Pierces in 1989, "there was a need to convey an additional seven (7) feet by way of an easement so that Parcel 1 could be subdivided from the main parcel" and that "all parties understood that this frontage requirement was the purpose of and reason for the seven foot easement north of Parcel 1." "The purpose was not for the joint driveway, and inclusion of the joint driveway language in [the deed] in that seven [foot] easement was a scrivener's error." The court further found that the Hattons "intended the seven foot easement solely for frontage, and that they believed they expressly reserved use of the Two Rutted Lane . . . as the joint driveway." In addition, the court found that the Pierces were equally aware that the seven-foot easement was only for frontage purposes and that the Two Rutted Lane "was to be kept and preserved as a joint driveway." The court determined that the fact that the deed for Parcel 2 "reiterated the south seven feet of the Peterson Parcel as the joint driveway" was "nothing but a perpetuation of the scrivener's error originating in the deed to Parcel 1."

¶29  The district court observed that the deeds to Parcels 1 and 2 make the conveyances to the Pierces "subject to" the joint driveway. The court noted that the "subject to" language "would

have been entirely unnecessary if the parties to those deeds had understood the location of the property line and that the joint driveway was the south seven feet of the Peterson Parcel as the Pierces now argue." The court determined that neither the Hattons nor the Pierces intended the south seven feet of the Peterson Parcel to be the joint driveway. Rather, the court concluded, "the existence of the joint driveway or rutted lane, in essentially the same spot for over 50 years and used by both predecessors and [the Petersons and the Pierces], shows that when the parties to the deeds said 'joint driveway' in the deeds, they clearly referred to the Two Rutted Lane they were using."

¶30    Based on its conclusion that the parties intended the "joint driveway" language in the deeds to refer to the Two Rutted Lane, the district court ordered a survey to locate the center of the Two Rutted Lane and granted the Petersons an easement to use "five feet on each side of the center line for a total of ten feet." The court then directed that the relevant deeds be reformed "to clarify that the joint driveway is not the seven foot strip north of [the Pierces'] property. Rather, it is the Two Rutted Lane."

¶31    The Pierces next assert that there was no mutual mistake between the parties. According to the Pierces, there was "no misconception in the deed as to the *location* or *size* of the easement." We are not persuaded.

¶32    This argument ignores the district court's findings. Specifically, the district court found that the Hattons and the Pierces "were not clear on the boundary between the Peterson Parcel to the north and Parcels 1 and 2 to the south." While Mr. Pierce testified that the boundary "was by the telephone pole to the east and at about to the southeast corner of the Starley fence on the west," "on cross examination[] it was clear that the west end of that boundary (the Northwest corner of Parcel 1) was roughly 25 to 30 feet away from the southeast corner of the Starley fence." Thus, the district court was persuaded that the parties considered "the southeast corner of Parcel 1 to be where

the fence and the cement marker, which is 4.5 feet south of where the survey line is." The court was also persuaded that "neither Harold Hatton nor [the Pierces] knew where the survey line actually was for the boundary between the Peterson Parcel and Parcels 1 and 2, and that this remained unknown until after Harold Hatton's death and until the line was surveyed and subsequently marked in the fall of 1997." The court further found that even after the survey was completed, there was still "confusion between the parties as to the precise location of the property line" and that "[e]very fence surrounding the original Hatton Family Trust parcel (Parcel 1, Parcel 2 and the Peterson Parcel) is several feet off from the survey line." The court determined that all of the parties intended the seven-foot easement described in the deeds to be for frontage and that the parties believed the Hattons had expressly reserved use of the Two Rutted Lane as the joint driveway referenced in the deeds.

¶33    Ultimately, the court concluded that the evidence of a mutual mistake was "abundant." The court determined that the legal description in the deeds "does not match the actual boundaries of the rutted lane or joint driveway as it was used prior to and at the time of conveyance," and that the "4.5 feet discrepancy on the southern border of Parcel 1 per 1997 survey" supported the claim of mutual mistake. In addition, the fact that the actual easement described in the deeds (on the Peterson Parcel) was never used by the parties as a joint driveway further supported a mutual mistake by the parties.

¶34    Given the existence of the "joint driveway or rutted lane, in essentially the same spot for over 50 years [that was] used by both predecessor and the parties," the court concluded that when the parties to the deeds said "joint driveway" in the deeds, they were referring to the Two Rutted Lane. The Pierces have failed to adequately challenge the court's findings of fact and conclusions of law on this point.

¶35    The Pierces also assert that the phrases "subject to" and "joint driveway" are vague and that the district court incorrectly

relied on those phrases instead of the metes and bounds description of the easement. As to their vagueness argument, the Pierces have failed to provide any analysis of this assertion. And, as Peterson correctly observes, the "metes and bounds description [in this case] simply does not describe the 'joint driveway' that the parties intended." Indeed, as the district court observed, if the Hattons and Pierces had understood the joint driveway to be on the Peterson Parcel, as the Pierces now argue, the "subject to" language in the deeds would have been unnecessary.

¶36   We do acknowledge that there appear to be some inconsistencies between the district court's findings of fact and conclusions of law and the language the court used in the reformed deeds. The Pierces note that "[i]f Appellants and Appellee agree that frontage was the purpose of the easement, and that the easement was intended to be seven feet, it is unclear how the [district] court could conclude the easement to be on Parcel 1 and ten feet wide." We agree that this is unclear. But a close reading of the district court's factual findings reveals that the original parties to the deeds intended to create two separate easements, and we agree with the district court on this point. But we find fault in the district court's failure to distinguish between the two easements in its reformation. First, the district court found that Hatton intended to include a seven-foot easement for frontage burdening the Peterson Parcel so that Parcels 1 and 2 could be subdivided from the main parcel. This easement was particularly described in the original deeds. Second, the court found that Hatton reserved for the Peterson Parcel a joint-driveway easement burdening the Pierce Parcel for the continued use of the Two Rutted Lane.

¶37   While a district court's factual findings can sometimes be unclear, the fact that two findings appear inconsistent "does not necessarily vitiate the judgment based thereon." *Wilkin v. O'Brien*, 176 P. 853, 856 (Utah 1918). When faced with inconsistent findings of fact, we must ask whether "the findings as a whole indicate what the court intended, and from them,

considered as a whole, can the intention of the court be satisfactorily determined?" *Id.* Although there are a few points of confusion, the district court's intentions in its deed reformation can satisfactorily be determined by assessing the district court's findings of facts and conclusions of law as a whole.

¶38    As previously stated, the district court found "by clear and convincing evidence" that the Hattons and the Pierces understood that providing frontage was the "reason for the seven foot easement north of Parcel 1." That easement "was not for the joint driveway, and the inclusion of the joint driveway language . . . was a scrivener's error." The district court also found that "when the parties to the deeds said 'joint driveway' in the deeds, they clearly referred to the Two Rutted Lane they were using." Taking these two findings in isolation, it appears the court's findings are inconsistent as the court seems to state that the joint driveway language is both a scrivener's error and evidence of the intent of the parties. But, looking at the broader context of the court's findings of fact, it is apparent that Peterson was "seek[ing] to reform [the deeds] such that [the] 'joint driveway' description is no longer confused with the seven foot easement north of [the Pierces'] property." The court then ordered the deeds to "be reformed to clarify that the joint driveway is not the seven foot strip north of [the Pierces'] property. Rather, it is the Two Rutted Lane." The court further directed that "the Two Rutted Lane be surveyed, that the center be located, and that [Peterson's] and her successor's right to use the Two Rutted Lane should be five feet on each side of the center line for a total of ten feet."[6]

¶39    However, the district court did not expressly order that the seven-foot frontage easement was to be included in the reformed deeds. We agree with the Pierces that the district court

---

6. The district court heard expert testimony that ten feet is a reasonable width for use of the Two Rutted Lane. The width is also consistent with the historical use of the Two Rutted Lane.

erred in describing only a ten-foot easement that burdens the Pierce Parcel when both parties agreed there was also a seven-foot easement burdening the Peterson Parcel for frontage. The district court acknowledged that the seven-foot frontage easement described in the original deeds but omitted a description of it in the reformed deeds. Neither party disputes the existence of this easement. While the district court's findings at times may appear inconsistent "a reasonably careful analysis, with the view of ascertaining their meaning, renders them sufficiently intelligible to support the judgment of the court." *Wilkin*, 176 P. at 856.

¶40    In sum, the record amply demonstrates that the parties intended that the Peterson Parcel be burdened by an easement for frontage, that the "joint driveway" language in the deeds refers to the Two Rutted Lane, and that there was a mutual mistake by the parties in reducing their intentions to writing. Consequently, reformation of the deeds to reflect the parties' actual intentions was an appropriate action. However, the district court's omission of language in the reformed deeds recognizing the frontage easement has created confusion that needs to be remedied. Accordingly, we vacate the district court's order reforming the deeds and we remand this issue to the district court to reform the deeds to correctly recognize the seven-foot easement for frontage in addition to the easement for the Two Rutted Lane.

### III. Attorney Fees Under the Lis Pendens Statute

¶41    The Pierces next contend that the district court erred by awarding Peterson attorney fees.

¶42    Utah Code section 78B-6-1303 provides that "[e]ither party to an action affecting the title to, or the right of possession of, real property may file a notice of the pendency of the action with the county recorder." Utah Code Ann. § 78B-6-1303(1) (LexisNexis 2012). The Utah Code provides that parties affected by the lis pendens "may make a motion to the court in which the

action is pending to release the notice." *Id.* § 78B-6-1304(1) (LexisNexis 2012). "A court shall order a notice released if," after receiving the motion, "the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim that is the subject of the notice." *Id.* § 78B-6-1304(2). "A court shall award costs and attorney fees to a prevailing party on any motion under this section *unless the court finds that*: (a) the nonprevailing party acted with substantial justification; or (b) other circumstances make the imposition of attorney fees and costs unjust." *Id.* § 78B-6-1304(6) (emphasis added).

¶43　Here, after she filed her complaint, Peterson filed a lis pendens on Parcels 1 and 2. On September 5, 2014, the Pierces filed a motion to release the lis pendens and requested attorney fees pursuant to section 78B-6-1304. Peterson filed an opposition, in which she requested attorney fees pursuant to the same section of the Utah Code. Ultimately, the district court held a hearing on the matter and determined that the Pierces' motion to release the lis pendens would be heard at trial.

¶44　After trial, the district court determined that Peterson's lis pendens was "properly filed." Observing that both parties had requested an award of attorney fees and costs pursuant to Utah Code section 78B-6-1304(6), the court awarded Peterson her attorney fees and costs "insofar as those attorney[] fees and costs were incurred to defend against [the Pierces'] Motion to Remove the Lis Pendens, and establish [Peterson's] claim for an easement and mutual mistake." Thus, the court awarded Peterson her attorney fees incurred after September 5, 2014. The court directed Peterson's attorney to "submit an affidavit of attorney[] fees and costs consistent with the rules, allowing [the Pierces] to review and otherwise object to the same before submitting them to the Court. If there is an objection, the Court may set the matter for further hearing and issue a final decision."

¶45　Consistent with the district court's order, Peterson's counsel submitted an affidavit and a partially redacted billing

history detailing Peterson's attorney fees and costs incurred in defending against the Pierces' motion to remove the lis pendens. The Pierces did not object to or challenge the affidavit, nor did they request a hearing on the issue of attorney fees.

¶46 On appeal, the Pierces first claim that they were "unaware the [district] court was considering their motion to remove lis pendens as determinative of an award to Peterson for attorney fees from the *entire* case." As Peterson correctly observes, however, the district court did not award her attorney fees for the *entire* case; rather, the court awarded attorney fees from the time the Pierces filed their motion to release lis pendens—September 5, 2014—until the end of trial.

¶47 The Pierces also claim that they "had no opportunity to raise this issue during trial." But the Pierces themselves requested attorney fees in bringing their motion to release the lis pendens, and they also requested attorney fees in their opening statement at trial. Thus, the Pierces' claim that they did not have the opportunity to raise the attorney fees issue at trial is not well taken. Moreover, and perhaps more importantly, in awarding Peterson attorney fees, the district court provided that the Pierces would have an opportunity to review and object to Peterson's affidavit of attorney fees before submission to the court. The court stated that if the Pierces had an objection to Peterson's affidavit, it would set the matter for a hearing. But as previously noted, the Pierces did not object to or challenge Peterson's affidavit, nor did they request a hearing on the issue of attorney fees. Consequently, we conclude that the Pierces waived any objection to Peterson's affidavit when they failed to object or request a hearing on the matter as provided for by the district court. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (stating that "[i]ssues that are not raised at trial are usually deemed waived").

¶48 Lastly, the Pierces claim that the district court "erroneously" awarded attorney fees to Peterson. Utah Code section 78B-6-1304(6) (LexisNexis 2012) provides that "[a] court

*shall* award costs and attorney fees to a prevailing party on any motion under this section *unless the court finds that*: (a) the nonprevailing party acted with substantial justification; or (b) other circumstances make the imposition of attorney fees and costs unjust." Utah Code Ann. § 78B-6-1304(6) (emphases added). Here, the district court made no express findings as to whether the Pierces had acted with "substantial justification" or whether "other circumstances made the imposition of attorney fees and costs unjust," and we therefore presume that the district court did not find these considerations to be present. *See id.* § 78B-6-1304(8). Although the Pierces assert that the district court "should not have awarded *any* fees unless Peterson[] demonstrated that [the] Pierces lacked any 'substantial reason' to make the motion," they have failed to support that proposition with any authority or to otherwise demonstrate that the burden was on Peterson to prove that the Pierces had acted without substantial justification in moving to release the lis pendens. Accordingly, the Pierces have failed to carry their burden of persuasion on appeal. And in any event, if the Pierces had any objection to the district court's award of attorney fees to Peterson, they had ample opportunity to object and request a hearing in the district court.

¶49 In sum, the Pierces have failed to demonstrate that the district court incorrectly awarded attorney fees to Peterson or that the district court abused its discretion regarding the amount of attorney fees awarded.

## IV. Attorney Fees on Appeal

¶50 Peterson seeks an award of her attorney fees incurred on appeal. "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Austin v. Bingham*, 2014 UT App 15, ¶ 33, 319 P.3d 738 (quotation simplified). As both parties have partially prevailed on appeal, we accordingly decline to award Peterson her fees incurred on appeal.

CONCLUSION

¶51     We affirm the district court's ruling that mutual mistake by the original parties to the deeds necessitated that those deeds be reformed. But because the district court did not include a description of the seven-foot frontage easement, we vacate the court's order reforming the deeds. We remand for the district court to reform the deeds to include language that expressly recognizes the seven-foot frontage easement on the Peterson Parcel in addition to the easement for the Two Rutted Lane.

_____

APPENDIX



Note: This diagram is not drawn to scale and is provided only for illustrative purposes.