2024 UT App 31

# THE UTAH COURT OF APPEALS

BRUCE RAY MCFARLAND,
Appellee,
*v.*
NICOLE S. MCFARLAND,
Appellant.

Opinion
No. 20221044-CA
Filed March 14, 2024

Second District Court, Farmington Department
The Honorable David J. Williams
No. 084701533

Angilee K. Dakic, Attorney for Appellant

Jacob K. Cowdin, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1      This domestic dispute between Bruce Ray McFarland (Bruce) and Nicole S. McFarland (Nicole) comes before us for a second time. This time, we are asked to assess the propriety of two aspects of the district court's most recent set of orders: the court's decision to modify the parties' divorce decree and award the house in which the parties lived while they were married (the Home) to Bruce instead of to Nicole, and the court's decision to require Nicole to pay Bruce's attorney fees incurred in litigating the petition to modify. We see no reversible error in the court's award of the Home to Bruce, and we therefore affirm on that issue. But we agree with Nicole that the court erred in awarding attorney fees to Bruce, and we therefore reverse that fee award.

BACKGROUND

¶2     In our previous opinion, we set forth many of the relevant facts underlying the parties' dispute. *See McFarland v. McFarland*, 2021 UT App 58, ¶¶ 2–18, 493 P.3d 1146. In the interest of brevity, we recite in this opinion only those facts necessary to our decision.

¶3     Bruce and Nicole's divorce decree (the Decree) was entered in 2009 following a negotiated settlement. As relevant here, the Decree required Bruce to pay Nicole $1,700 per month in alimony, and it awarded the Home to Nicole "subject to" her "assumption" of the mortgage, tax, and insurance obligations associated with the Home as well as "a judicial lien in the sum of $12,034.24 payable to" Bruce. According to the Decree, Nicole was to pay Bruce the lien amount on the occurrence of the first of these events: (1) when Nicole remarries or cohabits; (2) when the Home is sold or rented; (3) when Nicole "moves from" the Home or no longer uses it as her primary residence; or (4) when the parties' youngest child graduates from high school. Several of those events have long since occurred; indeed, the district court later found that Nicole "abandoned" the Home in 2010. At no point did Nicole ever make any of the mortgage, tax, or insurance payments on the Home, nor did she ever pay Bruce the lien amount.

¶4     Instead, after a brief period in which he did not live in the Home, Bruce moved back into the Home in 2009 and has lived there at all times since. And after entry of the Decree, Bruce—rather than Nicole—has made all mortgage, tax, and insurance payments on the Home, and he has also maintained and made improvements to the Home. But other than one single payment in January 2009, Bruce paid no alimony to Nicole. Thus, soon after the Decree was entered, both parties began to ignore many of the Decree's important provisions. But for the next seven years, neither party seemed bothered by the other's noncompliance, and neither sought to modify or enforce the terms of the Decree.

¶5      In 2017—apparently motivated by a desire to refinance the Home—Bruce filed a petition to modify (Bruce's Petition), asking the court to modify the Decree to (among other things) award him the Home. Nicole responded not only by resisting Bruce's Petition, but also by filing two motions asking the court to hold Bruce in contempt for (among other things) failing to pay alimony and for "willfully occup[ying Nicole's] property," namely, the Home. Concerning the Home, Nicole asked that the court "immediately restore[]" her "to the use and possession of" the Home. Later, in 2019, the court found Bruce in contempt for failing to pay alimony, and it ordered Bruce to pay Nicole over $150,000 in unpaid alimony. But the court declined to find Bruce in contempt for occupying the Home. The court made no ruling on Bruce's Petition, however, because that matter had apparently not yet been certified for trial. But the court allowed Bruce to continue living in the Home "on a temporary basis" until the matter was finally resolved.

¶6      Both parties appealed several aspects of the court's 2019 rulings and, in this case's first trip to this court, we affirmed the court's alimony award to Nicole and remanded "the case for further proceedings" regarding (among other things) Bruce's Petition. *Id.* ¶¶ 46–47.

¶7      Following remand, the district court held a hearing to consider matters regarding the Home. Bruce asserted that any claim Nicole might make regarding possession of the Home was barred by several equitable doctrines, including waiver and laches. In particular, Bruce claimed that Nicole had waived any claim to the Home by moving out in 2010 and taking no action in the intervening years to challenge Bruce's possession of it, and that Nicole's claim was barred by laches because her "delay in bringing her claim" was "unreasonable" and "prejudicial to Bruce." Nicole resisted all of these arguments and, in addition, claimed that Bruce's Petition was barred by res judicata.

¶8      At the conclusion of the hearing, the court made an oral ruling granting Bruce's Petition and denying Nicole's motion regarding the Home. The court later issued a written ruling setting forth its findings and conclusions. In that ruling, the court found that Nicole's abandonment of the Home in 2010 constituted "a material and substantial change in circumstances." The court also rejected Nicole's claim that Bruce's Petition was barred by res judicata. And the court determined that modification of the Decree to award Bruce the Home was appropriate; the court found merit in several of Bruce's equitable arguments. Specifically, the court determined that Nicole had waived any claim to the Home by moving out and failing to make any payments related to the Home since the Decree was entered. And the court concluded that laches also barred Nicole's claim to the Home because she had delayed bringing any such claim and her delay had prejudiced Bruce because Bruce had made payments and improvements on the Home in the intervening years. The court noted that Bruce had also delayed in bringing his petition, but it found that Nicole had not been prejudiced by Bruce's delay.

¶9      Bruce asked the court to award him attorney fees incurred in litigating his petition. As the district court interpreted it, this request was grounded not in the attorney fees statute found in the family law code, *see* Utah Code § 30-3-3, but, instead, in Utah's bad-faith attorney fees statute, *see id.* § 78B-5-825. The court granted Bruce's request, but it made no specific finding that Nicole's claims and defenses regarding the Home had been "without merit." It did make an express finding that "Nicole's effort to pursue an award of [the Home] roughly eight (8) years after abandoning [it] was an act of bad faith" that Nicole undertook with a "retaliatory" motive in reaction to the filing of Bruce's Petition. And the court noted that, during the intervening years, Nicole "had not satisfied the conditions in the Decree that allowed her to take possession of" the Home. Based on these findings, the court concluded that "law and equity call for an award of attorney fees in Bruce's favor as it relates to the issue of"

the Home. The court later quantified that attorney fee award, ordering that Nicole pay Bruce $7,390.67 for attorney fees he incurred litigating issues related to the Home.

ISSUES AND STANDARDS OF REVIEW

¶10    Nicole appeals two aspects of the court's rulings. First, she challenges the court's order modifying the Decree to award the Home to Bruce. "In this context, we review the district court's underlying findings of fact, if any, for clear error," and we review "its ultimate determination regarding the petition to modify[] for an abuse of discretion." *Myers v. Myers*, 2023 UT App 20, ¶ 19, 526 P.3d 1253. Whether the court chose and applied the correct legal standard is a question of law "that we review for correctness." *Peeples v. Peeples*, 2019 UT App 207, ¶ 11, 456 P.3d 1159.

¶11    As discussed below, our analysis on this point focuses on the court's application of the doctrine of laches and, in particular, on its determination that Bruce was prejudiced by Nicole's delay in asserting a right to possession of the Home. "The application of laches to a particular set of facts and circumstances presents a mixed question of law and fact." *Peterson v. Pierce*, 2019 UT App 48, ¶ 9, 440 P.3d 833 (quotation simplified). While "[l]aw-like mixed questions are reviewed de novo," mixed questions that are more "fact-like" are "reviewed deferentially." *Sawyer v. Department of Workforce Services*, 2015 UT 33, ¶ 11, 345 P.3d 1253. For the reasons discussed more fully later, *see infra* ¶¶ 18–21, we conclude that a district court's prejudice determination made in the laches context is more fact-like than law-like and, therefore, calls for a more deferential standard of review.

¶12    Second, Nicole challenges the court's award of attorney fees to Bruce under the bad faith statute. "We review a trial court's grant of attorney fees under the bad faith statute as a mixed question of law and fact." *Outsource Receivables Mgmt., Inc. v. Bishop*, 2015 UT App 41, ¶ 11, 344 P.3d 1167 (quotation simplified).

"A finding of bad faith is a question of fact and is reviewed by this court under the 'clearly erroneous' standard," but a "'without merit' determination is a question of law" that we review "for correctness." *Id.* (quotation simplified).

ANALYSIS

I

¶13    We first address Nicole's challenge to the district court's grant of Bruce's Petition and its accompanying order modifying the Decree to award the Home to Bruce. The court based its ruling on several distinct legal doctrines, including waiver and laches. Nicole challenges the application of these doctrines, asserting that none of them apply to the facts at hand. For the reasons discussed, we conclude that the court did not abuse its discretion when it concluded that Bruce was prejudiced by Nicole's delay in asserting her claim to the Home, and that therefore the doctrine of laches operates to bar Nicole's claim. Because we affirm the court's laches determination, we need not reach the question of whether the court erred in its application of waiver or any other legal or equitable doctrine.

¶14    "Laches" is an equitable doctrine "founded upon considerations of time and injury." *Insight Assets, Inc. v. Farias*, 2013 UT 47, ¶ 17, 321 P.3d 1021 (quotation simplified). The thing that the doctrine is concerned about "is not mere delay, but delay that works a disadvantage to another." *Id.* (quotation simplified). "In Utah, laches traditionally has two elements." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502. First, the party claiming laches must demonstrate that the other party "unreasonably delayed in bringing" a claim. *See Veysey v. Nelson*, 2017 UT App 77, ¶ 8, 397 P.3d 846 (quotation simplified), *cert. denied*, 400 P.3d 1046 (Utah 2017). Second, the party claiming laches must demonstrate that it "was prejudiced by that delay." *Id.* (quotation simplified); *see also Laches*, Black's

Law Dictionary (11th ed. 2019) (defining "laches" as "[t]he equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought").

¶15 Nicole concedes that the first element of the laches test—unreasonable delay—is met here, given her eight-year delay in objecting to Bruce's possession of the Home. Because of this concession, we need concern ourselves only with the second element of the laches test: whether Bruce was prejudiced by Nicole's unreasonable delay.

¶16 On that point, the district court made a specific finding that Bruce would suffer "clear prejudice" if Nicole were allowed to claim possession of the Home. The court observed that Bruce had raised the parties' children in the Home, had made "improvements" to the Home, and had taken care of "all financial obligations related to" the Home since 2009. In light of these undisputed facts, the court determined that Bruce would be prejudiced if Nicole were allowed to assert, after all these years, a right to exclusively use and possess the Home.

¶17 Nicole challenges the court's prejudice determination, asserting that her delay in asserting her rights to the Home was actually "a benefit to Bruce" because it gave him a place to live and because he was able to take "significant amounts of equity out of" the Home "on multiple occasions." But before we can address Nicole's challenge to the court's prejudice determination, we must first determine the appropriate standard of review.

¶18 As previously mentioned, *see supra* ¶ 11, a district court's "application of laches to a particular set of facts and circumstances presents a mixed question of law and fact." *Peterson v. Pierce*, 2019 UT App 48, ¶ 9, 440 P.3d 833 (quotation simplified). "Mixed questions fall somewhere in the twilight between deferential review of findings of fact and searching reconsideration of conclusions of law." *In re adoption of Baby B.*, 2012 UT 35, ¶ 42, 308

P.3d 382. The level of deference afforded to district courts in such situations thus depends on whether the determination at issue is more law-like or fact-like. *See Sawyer v. Department of Workforce Services*, 2015 UT 33, ¶ 11, 345 P.3d 1253. We must therefore assess whether a determination regarding prejudice, in the laches context, is more fact-like than law-like. As far as we are aware, no Utah court has yet rendered a specific ruling on this question.

¶19 When considering whether a question "should be deemed law-like or fact-like, we evaluate the marginal costs and benefits of conducting either a searching de novo review or a deferential review of a lower tribunal's resolution of the mixed question.*" Id.* ¶ 12 (quotation simplified). To that end, our supreme court has instructed us to consider three relevant factors:

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on facts observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts.

*Id.* (quotation simplified).

¶20 The first two factors compare "the relative competencies" of "a fact-finding tribunal" and that of "an appellate court." *Id.* ¶ 13. District courts and other fact-finding tribunals "are in a superior position to weigh facts that depend upon credibility determinations, the direct observation of witness testimony, and other evidence not fully captured in a written appellate record." *Id.* On the other hand, appellate courts are in a better position to fashion "broad rules that can create a greater degree of consistency and predictability to future cases involving a particular mixed question." *Id.* An inquiry that is highly "fact-

intensive" is not one that "lend[s] itself to consistent resolution by a uniform body of appellate precedent." *Carbon County v. Workforce Appeals Board*, 2013 UT 41, ¶ 7, 308 P.3d 477 (quotation simplified). Thus, a district court is "entitled to deference" where its determinations are "fact-intensive" because an appellate court "would be in an inferior position to review the correctness" of such a decision. *Id.* (quotation simplified).

¶21 Assessing whether a litigant's unreasonable delay in bringing a claim has caused another party to sustain prejudice is a case-specific, fact-bound inquiry that will depend on the particular circumstances at hand, as well as—at least in many cases, including this one—on the district court's perception of the progression of the litigation. Indeed, for this very reason, Utah appellate courts have concluded, in a number of analogous contexts, that appellate review of a district court's prejudice determination should be deferential. *See State v. De La Rosa*, 2019 UT App 110, ¶ 9, 445 P.3d 955 (reviewing deferentially a district court's "substantial adverse effect" determination, made in the context of assessing whether a new trial was warranted, "due to [the district court's] advantaged position to judge the impact of legal errors on the total proceedings" (quotation simplified)); *see also State v. Maestas*, 2012 UT 46, ¶ 325, 299 P.3d 892 (stating that district courts "have discretion in granting or denying a motion for a mistrial . . . because of the[ir] advantaged position . . . to determine the impact of events occurring in the courtroom on the total proceedings" (quotation simplified)); *Butler v. Mediaport Ent. Inc.*, 2022 UT App 37, ¶¶ 32, 48, 508 P.3d 619 (stating that "we review a district court's harmlessness determination," made in the discovery and disclosure context, deferentially "for abuse of discretion" because "a district court will almost always have a better vantage point than we do to make such a call"). We also observe that laches is an equitable doctrine, *see Insight Assets*, 2013 UT 47, ¶ 17, and "equitable inquiries are designed to be flexible, taking into account all relevant factors in light of the particular circumstances," *Jones v. Layton/Okland*, 2009 UT 39, ¶ 17, 214 P.3d

859. "Because of the fact-intensive nature of equitable doctrines," we generally grant district courts "broader discretion in applying the law to the facts." *Volonte v. Domo, Inc.*, 2023 UT App 25, ¶ 28, 528 P.3d 327 (quotation simplified). For all of these reasons, we conclude that a district court's determination that a litigant has (or has not) sustained prejudice as a result of another party's unreasonable delay in bringing a claim is entitled to deference from appellate courts and is a determination that should be reviewed for abuse of discretion.

¶22     We discern no abuse of discretion in the district court's determination that Bruce sustained prejudice as a result of Nicole's eight-year delay in asserting her right to the Home. The court's ruling was well-reasoned and supported by evidence in the record. As noted, the court relied on the fact that Bruce had lived in the Home the entire time, raised the parties' children there, and—perhaps most importantly—had taken care of all financial obligations related to the Home, including all maintenance and improvements.

¶23     We acknowledge Nicole's point that Bruce enjoyed certain advantages as a result of living in the Home. As Nicole points out, Bruce would have had to pay for housing whether he lived in the Home or elsewhere, and Bruce was apparently able to take advantage of the equity in the Home. These facts could have led the district court to make a different determination with regard to whether Bruce was prejudiced by Nicole's delay. But the presence of conflicting evidence does not compel reversal here. Given the applicable standard of review, the relevant question is not whether we would have made the same determination had we been sitting as the assigned trial-level arbiters in this case; rather, the relevant question is whether we discern an abuse of discretion in the decision the assigned judge made. *See Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 49, 424 P.3d 72 (stating that "[t]he question presented is not whether we would have granted" the motion in question, but instead

"whether we find an abuse of discretion in the district judge's decision to deny the motion"). Where the court's decision is supported by evidence in the record and free from legal error, we will not disturb it. And that is the case here.

¶24 Nicole resists this conclusion on three additional grounds. First, she points out that Bruce also delayed in asserting a right to the Home, and she complains that the district court applied the principles of laches in an uneven manner. But on this point, the district court made a specific determination that, although Bruce delayed the invocation of his claim to the Home, Nicole did not sustain any prejudice as a result of Bruce's delay. The court noted that, during the time between her "abandonment" of the Home and the filing of Bruce's Petition, Nicole "did not have to satisfy any financial obligations related to" the Home, "including those required by the Decree." The court's determination was therefore supported by evidence in the record and, while a different judge might have reached a different conclusion on these facts, we cannot say that the court's ruling was an abuse of its discretion.

¶25 Second, Nicole asserts that Bruce should not be able to take advantage of equitable doctrines such as laches because, in her view, Bruce had "unclean hands" due to his failure to pay alimony and child support, as required by the terms of the Decree, during the years he lived in the Home. *See Goggin v. Goggin*, 2013 UT 16, ¶ 60, 299 P.3d 1079 ("The doctrine of unclean hands expresses the principle that a party who comes into equity for relief must show that his conduct has been fair, equitable, and honest as to the particular controversy in issue." (quotation simplified)). But while Nicole (successfully, as it turned out) asked the district court to award her back alimony and child support, she never asked the district court to apply the doctrine of unclean hands, and her arguments in this regard are therefore unpreserved for appellate review. *See State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443 ("A failure to preserve an issue in the trial court

generally precludes a party from arguing that issue in an appellate court, absent a valid exception.").

¶26 Nicole does not explicitly ask us to utilize any of the exceptions to our preservation requirement, but she does assert that the district court erred by failing to "sua sponte" apply the unclean hands doctrine. Certainly, a court may invoke that doctrine without being asked to do so. *See* 30A C.J.S. *Equity* § 116 (2023) ("A defense of unclean hands need not be pleaded. The doctrine may be applied by the court sua sponte."). But the fact that a court *may* invoke the doctrine in a sua sponte manner does not relieve a party of its otherwise-applicable obligation to preserve issues for appellate review. Indeed, construed liberally, Nicole's argument—that the district court erred by failing to sua sponte invoke the unclean hands doctrine—is an assertion that the court plainly erred by not concluding that Bruce's unclean hands barred him from accessing equitable doctrines like laches. But this assertion fails because plain error review no longer exists in civil cases like this one. *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 44, 507 P.3d 357. Because plain error review is unavailable, and because Nicole does not ask us to employ any other exception to our preservation requirement, the fact that her "unclean hands" argument is unpreserved requires us to reject her argument without reaching its merits.

¶27 Finally, Nicole asserts that Bruce's Petition was barred by the doctrine of res judicata. Essentially, she asserts that, because the parties already litigated the issue of entitlement to the Home, and because the Decree awarded the Home to her, Bruce is barred from relitigating that issue now. Nicole correctly asserts that res judicata is not categorically inapplicable in divorce cases. *See Throckmorton v. Throckmorton*, 767 P.2d 121, 123 (Utah Ct. App. 1988) ("The doctrine of res judicata applies in divorce actions."). But "[i]n the family law context, our legislature has given district courts the authority to revisit many of the provisions contained in a typical divorce decree, including provisions pertaining to child

custody, child support, alimony, *property distribution*, and debts."
*See Robertson v. Stevens*, 2020 UT App 29, ¶ 7, 461 P.3d 323
(emphasis added); *see also* Utah Code § 30-3-5(5). In this context, a
party may seek post-judgment modification of the property
distribution provisions of a divorce decree, but in order to succeed
in that endeavor the party "must demonstrate that a substantial
change in circumstances has occurred since the entry of the
decree." *See Toone v. Toone*, 952 P.2d 112, 114 (Utah Ct. App. 1998)
(quotation simplified); *see also Throckmorton*, 767 P.2d at 123
("[T]he application of res judicata is unique in divorce actions
because of the equitable doctrine which allows courts to reopen
alimony, support, or property distributions if the moving party
can demonstrate a substantial change of circumstances since the
matter was previously considered by the court.").

¶28    Thus, modification of the Decree's property distribution
provisions is appropriate—even post-judgment and even taking
into account principles of res judicata—so long as Bruce can
demonstrate that, since entry of the Decree, there has been a
substantial change of circumstances that would justify the court
taking a second look at the terms of the distribution. And on that
point, Nicole raises no challenge; indeed, in her reply brief on
appeal she makes clear that she "is not arguing lack of changed
circumstance," and she affirmatively acknowledges that, in this
case, "there have been changed circumstances." Thus, the court
had the authority to revisit the property distribution provisions of
the Decree, and we reject Nicole's argument to the contrary.

¶29    For these reasons, we perceive no abuse of discretion in the
district court's determination that Bruce was prejudiced by
Nicole's unreasonable delay in asserting her right to possess the
Home. Because Nicole does not contest the other element of
laches—unreasonable delay—both elements are met. We
therefore affirm the district court's determination that the
equitable doctrine of laches barred Nicole's claim to the Home,

and on that basis we affirm the court's grant of Bruce's Petition and its accompanying order awarding the Home to Bruce.

II

¶30    Next, we address Nicole's challenge to the court's award of attorney fees to Bruce, incurred in connection with litigating issues related to the Home. On this point, we find merit in Nicole's arguments, and we therefore reverse the court's fee award.

¶31    Bruce's fee request was grounded in Utah's bad-faith attorney-fees statute, which empowers courts to "award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." *See* Utah Code § 78B-5-825(1). Before awarding fees under this section, a district court—in addition to determining that the requesting party is the "prevailing party"—must make specific findings that the opposing party's claim is (1) "without merit" and (2) "not brought or asserted in good faith." *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, ¶ 76, 469 P.3d 1003 (quotation simplified). These two findings "must be made independently" from one another. *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 12, 122 P.3d 556. Nicole asserts that the court failed to make a specific finding that her claims and defenses regarding the Home were without merit, and she maintains that the fee award was therefore improper. We agree with Nicole.

¶32    While the court made a specific finding that Nicole's claims and defenses regarding the Home were asserted in "bad faith" and on a "retaliatory" basis, it made no specific finding that Nicole's claims were without merit. Bruce acknowledges the lack of an express finding on this point, but he asserts that we can infer such a finding from (a) the fact that the court rejected Nicole's claims on their merits (i.e., that she lost) and (b) the court's specific bad-faith finding. We see the matter differently.

¶33     First, a determination that a party lost on the merits is not equivalent to a determination that the party's claims were without merit for purposes of the bad-faith statute. "Without merit" in this context means something worse than just having a losing claim. Indeed, our supreme court has stated that the term "without merit," as used in the bad-faith statute, "implies bordering on frivolity," with the term "frivolous" meaning "of little weight or importance having no basis in law or fact." *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983) (quotation simplified); *see also Migliore v. Livingston Fin. LLC*, 2015 UT 9, ¶ 31, 347 P.3d 394 ("To determine whether a claim is without merit, we look to whether it was frivolous or of little weight or importance having no basis in law or fact." (quotation simplified)). And on at least one occasion, our supreme court has concluded that a losing claim was *not* "without merit," because the claim—even though it was not the prevailing claim—involved a question of "first impression" and "had a basis in law and fact." *See In re Olympus Constr. LC*, 2009 UT 29, ¶ 31, 215 P.3d 129. We therefore may not infer, merely from the district court's rejection of Nicole's claims on their merits, that the court considered those claims to be so meritless as to be "bordering on frivolity." *See Cady*, 671 P.2d at 151.

¶34     Nor may we draw that inference from the court's "bad faith" finding. As noted already, the two separate findings—without merit and bad faith—"must be made independently" from one another. *Still Standing Stable*, 2005 UT 46, ¶ 12. And this makes sense, because the two elements of the statutory test are aimed at two different things. The first element ("without merit") is concerned with the objective quality of the claim itself, *see Migliore*, 2015 UT 9, ¶ 31, while the second element ("bad faith") is concerned with the party's subjective motivation for bringing it, *see Blum v. Dahl*, 2012 UT App 198, ¶ 9, 283 P.3d 963 ("A finding of bad faith turns on a factual determination of a party's subjective intent." (quotation simplified)). Both elements must be met before a court may award attorney fees under the bad-faith statute. And

the presence of one element does not necessarily imply the presence of the other.

¶35 For instance, a party may have a completely frivolous claim that lacks any basis in law or fact, but that party may not be aware of the claim's lack of merit at the time it was filed. In that situation, the first element of the test is met but, depending on the circumstances, the second might not be. Conversely, a party may have a solid (albeit losing) claim that has a basis in both law and fact, but the party might be bringing that claim for abusive or improper reasons. In that situation, the second element might be met but the first one wouldn't be. In the case at hand, our review of the record indicates that this might be the situation: Nicole had in her corner a provision in the Decree awarding her the Home, and Bruce had not taken any action to seek modification of that provision in eight years. Given these facts, it is certainly not obvious to us that Nicole's claims and defenses regarding the Home were "bordering on frivolity," *see Cady*, 671 P.2d at 151, even if we take at face value the court's finding that Nicole brought the claims in a bad-faith effort to retaliate against Bruce.

¶36 Accordingly, we conclude that the absence of any specific finding that Nicole's claims were without merit renders the district court's attorney fees award improper.[1]

CONCLUSION

¶37 We discern no abuse of discretion in the district court's determination that laches barred Nicole's claims and defenses regarding the Home, and on that basis we affirm the district

---

1. Again invoking the bad-faith statute, Bruce asks us to award him attorney fees he incurred on appeal. We must reject this request because we have reversed the award of attorney fees in the district court. Moreover, we do not consider Nicole's appellate arguments to have been brought in bad faith.

court's grant of Bruce's Petition and its accompanying order awarding the Home to Bruce. But due to the absence of any finding that Nicole's claims and defenses were without merit, we reverse the court's award of attorney fees to Bruce pursuant to the bad-faith statute, and we vacate the part of the court's judgment that required Nicole to pay $7,390.67 in fees to Bruce.

———————